UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| Rafael Serrata, | 1:18-CV-2016 |
| --- | --- |
| *Plaintiff*, | |
| – against – | **Not for Publication** |
| Police Officer Vanessa Givens, *et al.*, | |
| *Defendants*. | **Opinion & Order** |

ROSS, United States District Judge:

The plaintiff in this case is seeking damages for injuries suffered in an arrest that he claims was unjustified. In seeking to dismiss the claims against her, one of the police officer defendants argues not just that the allegations in the complaint, taken as true, fail to state a claim but also that an assortment of additional facts, drawn from a variety of exhibits annexed to the defendant's motion, show that the plaintiff cannot prevail on the merits. That is emphatically not the purpose of a motion to dismiss. Because I disregard the documents outside the pleadings, and because the defendant's few arguments based on the complaint itself fail, the defendant's motion is denied.

## BACKGROUND[1]

According to the complaint, in the early morning hours of January 14, 2017, the plaintiff was "lawfully standing on the sidewalk" outside of a bar in Queens, New York, when he was approached by several officers of the New York City Police Department.[2] Am. Compl.

---

[1] For present purposes, I assume the truth of the factual allegations in the plaintiff's complaint, as I must. *See infra* Section A.

[2] The plaintiff is suing all these officers. Three have thus far been identified; the others are currently sued as "John Does." Only one of the identified officers, however—defendant Vanessa Givens—has moved to dismiss the complaint.

¶¶ 13–14, ECF No. 21. The officers told the plaintiff to "turn around" and then searched him for a weapon. *Id.* ¶¶ 15–17. Although no weapon was found, one of the officers, "without just cause and without provocation," then "slammed" the plaintiff up against the plaintiff's car. *Id.* ¶¶ 18, 20. The other officers, including moving defendant Vanessa Givens, "joined in concert" with the first officer in "violently push[ing] Plaintiff up against" the car, and Givens handcuffed the plaintiff. *Id.* ¶¶ 21–22.

Givens and other officers then used the plaintiff's car keys, which they took from him during the search of his person, to search the trunk and cabin of his car. *Id.* ¶¶ 19, 23.[3] Givens and another officer then took the plaintiff to a police precinct, where a breath test was administered. *Id.* ¶¶ 27, 29. Ultimately, the plaintiff was held in custody for most of the day before the charges against him were dropped at arraignment. *Id.* ¶¶ 30–33.

The plaintiff alleges that being slammed against the car resulted in his suffering from two bulging discs in his spine, which not only caused him pain but also caused him to miss six months of work. *Id.* ¶¶ 41–43.

The plaintiff filed a complaint in this court naming Givens and the City of New York as defendants on April 4, 2018. Compl., ECF No. 1. Givens and the city answered the complaint on August 9, 2018. Answer, ECF No. 10. On October 12, 2018, the defendants indicated that they would seek to move for judgment on the pleadings, based in part on a 911-call report, pages from Givens's memo book, an arrest report, and a breath-test report. *See* 12(c) Letter Mot. 1–2, ECF No. 13. On November 6, 2018, I held a conference with the parties at which I advised counsel for the plaintiff that certain of his causes of action did not appear to state a claim and advised counsel for the defendants that they likely could not rely on

---

[3] The complaint alleges that, "[a]ccording to Defendant[ ] GIVENS, the search revealed a bottle of VSOP brandy on the front seat" of the car. Am. Compl. ¶ 25. It is not clear whether the inclusion of this allegation is meant to acknowledge or to deny the presence of a bottle of brandy in the car. Ultimately, however, the existence of the brandy is immaterial to the present motion.

documents outside the pleadings on a motion under Rule 12. *See* Min. Entry, ECF No. 19; *see also* Fed. R. Civ. P. 12(d).

The plaintiff then amended his complaint, on November 30, 2018, dropping his claims against the city but naming two additional police-officer defendants. *See* Am. Compl. On December 5, 2018, defendant Givens indicated that she still intended to move to dismiss the complaint. *See* 12(b)(6) Letter Mot., ECF No. 22. That motion has now been filed and is fully briefed.

## DISCUSSION

The defendant's arguments fall into three categories. First, relying on materials outside the pleadings, she argues that the required reasonable suspicion or probable cause existed for the defendants' alleged conduct. Second, looking at the complaint itself, she argues that a number of the plaintiff's federal causes of action fail to state a claim. And third, she argues that the plaintiff's state-law claims must be dismissed for failure to comply with a state procedural requirement. Because materials outside the pleadings are not considered on a motion to dismiss (*see infra* Section A), the first set of arguments can be readily dispensed with. And, for the reasons set forth below, the second and third sets of arguments fail on the merits. *See infra* Sections B–C.

**A.     Standard on a Motion to Dismiss**

Although the legal standard on a motion under Rule 12(b)(6) is well known, it evidently bears repeating. "In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Coggins v. County of Nassau*, 988 F. Supp. 2d 231, 240 (E.D.N.Y. 2013), *aff'd in part, appeal dismissed in part sub nom. Coggins v. Buonora*, 776 F.3d 108 (2d Cir. 2015). In addition to "the factual allegations in the complaint," the record

on a motion to dismiss is limited to: "documents attached to the complaint as an exhibit or incorporated in it by reference"; "documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are 'integral' to the complaint"; and "matters of which judicial notice may be taken." *Polanco v. NCO Portfolio Mgmt., Inc.*, 23 F. Supp. 3d 363, 369 (S.D.N.Y. 2014) (quoting *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003)). Any other documents presented to the court must be "excluded," or else the court must "convert the motion to one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002).

In this case, the defendant's motion is largely based on various materials that were not attached to the complaint: namely, the transcript of a hearing taken pursuant to section 50-h of the New York General Municipal Law (50-h Tr., ECF No. 30-2), a report relating to a 911 call processed by the NYPD (911 Report, ECF No. 30-3), an NYPD arrest report (Arrest Report, ECF No. 30-4), an excerpt from the defendant's memo book (Memo Book, ECF No. 30-5), and a report from the NYPD's Intoxicated Driver Testing Unit (IDTU Report, ECF No. 30-6).[4] For the reasons that follow, I exclude each of these documents in ruling on the defendant's motion.

1. *The Breath-Test Report and the Hearing Transcript*

After the arrest, the police tested the plaintiff's breath for the presence of alcohol. *See* Am. Compl. ¶ 29. Several months later, before filing this lawsuit, the plaintiff submitted to an examination by the city pursuant to section 50-h. *See id.* ¶ 45. In her motion, the defendant now seeks to rely on the report of the breath test and the transcript of the 50-h examination, arguing that the two documents "are not only incorporated by refence in plaintiff's First

---

[4] The plaintiff, in his opposition to the defendant's motion, has also submitted documentation outside the pleadings. Foster Decl. Ex. A, ECF No. 32-1.

Amended Complaint, but also are integral to plaintiff's complaint as he had actual notice of all of the information in the report and in the transcript and relied on them in framing his complaint." Def.'s Br. 8–9, ECF No. 31. Neither argument succeeds.

"To incorporate a document by reference, 'a complaint must make a clear, definite, and substantial reference to the document[ ]." *Polanco*, 23 F. Supp. 3d at 369 (alteration in original) (quoting *Allen v. Chanel Inc.*, No. 12-CV-6758 (RPP), 2013 WL 2413068, at *5 (S.D.N.Y. June 4, 2013)). The Second Circuit has stated that even "limited quotation does not constitute incorporation by reference." *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985). Here, the plaintiff neither attached the documents in question to his complaint nor even referred to their existence. Although he acknowledges that his breath was tested and that he sat for a 50-h examination, he makes no mention whatever of the *documents* that purportedly resulted from these events. As such, "[t]hese documents are unquestionably not 'incorporated' into the Complaint." *Williams v. City of New York*, No. 14-CV-5123 (NRB), 2015 WL 4461716, at *1 (S.D.N.Y. July 21, 2015).

Even "[w]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Alvarez v. County of Orange*, 95 F. Supp. 3d 385, 394 (S.D.N.Y. 2015) (quoting *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)). "For a document to be considered 'integral to a complaint,' a plaintiff must have had '(1) "actual notice" of the extraneous information and (2) "relied upon th[e] documents in framing the complaint."'" *Polanco*, 23 F. Supp. 3d at 370 (alteration in original) (quoting *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 59–60 (S.D.N.Y. 2010)); *see also Chambers*, 282 F.3d at 153 ("[W]e reiterate here that a plaintiff's *reliance* on the terms and effect of a document in

drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.").

Here, the defendant asserts that the plaintiff "had actual notice of all of *the information in* the report and *in* the transcript and relied on them in framing his complaint." Def.'s Br. 9 (emphasis added). But "there is no reason to believe that the plaintiff relied on the transcript of his own testimony, rather than his independent recollection of the events, in drafting the pleading." *Aguilera v. County of Nassau*, 425 F. Supp. 2d 320, 323 (E.D.N.Y. 2006). And there is nothing in the complaint that describes the *results* of the plaintiff's breath test. "Thus, the Court will disregard these documents for the purposes of this motion." *Martin v. County of Nassau*, 692 F. Supp. 2d 282, 289 (E.D.N.Y. 2010) (excluding documents that "the plaintiff did not rely upon").

In her reply, the defendant notes that "[t]here has been at least one district court in this circuit that has considered plaintiff's 50-h examination in deciding a motion to dismiss when the only fact explicitly referenced in plaintiff's amended complaint is that he attended a 50-h hearing." Def.'s Reply 2 n.1, ECF No. 34 (citing *Vessa v. City of White Plains*, No. 12-CV-6989 (ER), 2014 WL 1271230, at *4 n.11 (S.D.N.Y. Mar. 27, 2014)). The cited footnote in *Vessa*, however, runs contrary to the weight of authority in the Second Circuit.[5] *See Doe v. City of New York*, No. 18-CV-0670 (ARR), 2018 WL 3824133, at *5 (E.D.N.Y. Aug. 9, 2018) ("[T]he greater weight of authority in this circuit excludes 50-h hearing testimony from consideration

---

[5] It also runs contrary to the Second Circuit's clear instruction that the plaintiff's "*reliance*" on the document is "necessary." *Chambers*, 282 F.3d at 153. The defendant attempts to square the instant case with *Chambers* by arguing that the plaintiff "essentially relied on (or intentionally omitted)" information from the 50-h hearing "in framing [his] complaint." Def.'s Reply 2 n.1. But the defendant offers no support for the startling proposition that a document is integral to a complaint when the complaint *intentionally omits* any reference to the document. *Cf. Williams*, 2015 WL 4461716, at *2 ("A document is not 'integral' simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff *relied* on the document in preparing his complaint.").

6

on a motion to dismiss unless there is evidence that the plaintiff relied on the 50-h hearing testimony in drafting [his] complaint."); *Prevost v. City of New York*, No. 13-CV-3760 (VEC), 2014 WL 6907560, at *2 (S.D.N.Y. Dec. 9, 2014) ("District courts in this circuit regularly decline to consider 50-h Transcripts submitted in support of or in opposition to a motion to dismiss, even if neither party objects."); *Nielsen v. City of Rochester*, 58 F. Supp. 3d 268, 273 (W.D.N.Y. 2014) ("Generally speaking, a transcript from a 50-h hearing will be considered outside the four corners of the complaint."); *Fontanez v. Skepple*, No. 12-CV-1582 (ER), 2013 WL 842600, at *3 (S.D.N.Y. Mar. 6, 2013) ("In cases similar to the present one, courts have found that it is not appropriate to consider 50-h testimony in ruling on a Rule 12(b)(6) motion."), *aff'd*, 563 F. App'x 847 (2d Cir. 2014).

   *2. The Arrest Report, 911-Call Report, and Memo-Book Entry*

   As for the other documents that she attaches, the defendant argues that I "may take judicial notice of such documents as a matter of public record." Def.'s Br. 9.

   "Under Federal Rule of Evidence 201, 'a court may take judicial notice . . . of a fact that is not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Alvarez*, 95 F. Supp. 3d at 397 (quoting *United States v. Bari*, 599 F.3d 176, 180 (2d Cir. 2010)). But the defendant "offer[s] no argument as to how these documents are 'derived from an unimpeachable source'" (*id.* at 398 (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998))), instead simply noting that some courts in this circuit have previously taken judicial notice of the same sort of documents (*see* Def.'s Br. 9 (citing cases)). While it is true that "several courts have taken judicial notice of incident reports, arrest reports, police reports, and similar materials on a motion to dismiss, . . . [o]ther courts . . . have declined to do so." *Alvarez*, 95 F. Supp. 3d at 397.

7

What is more, courts that do take judicial notice of such documents do so "not for the truth of their contents, but rather to establish their existence." *Id.*; *see, e.g.*, *Williams*, 2015 WL 4461716, at *1 ("We may take judicial notice of the procedural history of plaintiff's criminal case, but not of the truth of the arresting officers' version of events."); *Coggins*, 988 F. Supp. 2d at 242 ("The Court takes judicial notice of these exhibits not for the truth of the facts asserted therein, but solely to determine what the respective parties said."). That is sensible, for "[t]o accept the truth of the documents offered by defendants at this stage would amount to a premature determination that the arresting officers are more credible than plaintiff." *Williams*, 2015 WL 4461716, at *2.

In this case, then, I might take judicial notice of the plaintiff's arrest report, if the question whether the plaintiff had been arrested was in dispute. *Cf. Wingate v. Deas*, No. 11-CV-1000 (ARR), 2012 WL 1134893, at *1 n.1, *3 (E.D.N.Y. Apr. 2, 2012) (relying on arrest reports and certificates of disposition to find that plaintiff had pleaded guilty to offense for which he had been arrested). There is no such dispute here. *See* Am. Compl. ¶ 26. Rather, the dispute centers on the facts leading up to and surrounding the plaintiff's arrest. To be sure, the defendant's account of those facts is contained in the narrative section of the arrest report and in her memo book, but the suggestion that I should consider *her* version of events—and credit it over the contrary factual allegations in the complaint—betrays a fundamental misunderstanding of Rule 12. I decline to take judicial notice of any of the proffered documents.[6]

---

[6] The plaintiff's opposition to the motion comes with extrinsic material of its own. *See* Foster Decl., ECF No. 32. In particular, the plaintiff attaches an NYPD complaint report that identifies the "victim" of the plaintiff's alleged misconduct. *See* Foster Decl. Ex. A, at 006. The defendant argues that she can rely on the complaint report submitted by the plaintiff. *See* Def.'s Reply 12 n.4 (citing *Colon v. City of New York*, No. 16-CV-6425 (KPF), 2018 WL 740992, at *4 (S.D.N.Y. Feb. 6, 2018)). In the case that the defendant cites for this proposition, however, the court considered extrinsic documents attached to the plaintiff's opposition brief only because the plaintiff was proceeding *pro se*. *See Colon*, 2018 WL 740992, at *3–4; *see also id.* at *3 ("[W]hen

8

**B.     Sufficiency of the Allegations**

Declining to consider the defendant's extrinsic submissions resolves several of the defendant's arguments, including: that the defendant had "reasonable suspicion to search or 'frisk' plaintiff for a weapon" (Def.'s Br. 13); that "there was probable cause to search plaintiff's car for a gun" (*id.* at 15); that "Givens is entitled to qualified immunity on plaintiff's unlawful search claim" (*id.*); that "there was probable cause for [plaintiff's] arrest" (*id.*); and that "Givens is entitled to qualified immunity on plaintiff's false arrest claim" (*id.* at 17). These arguments all fail because they were all predicated on the court's acceptance, and crediting, of materials outside the pleadings. I now turn to the arguments that the defendant makes based on the complaint itself.

   *1. Personal Involvement*

   a. The defendant first argues that the complaint insufficiently alleges her personal involvement in the stop and search of the plaintiff and in the alleged use of excessive force against the plaintiff. *See id.* at 10, 22. For the reasons that follow, this argument fails.

   "A plaintiff must allege facts showing an individual defendant's personal involvement in causing the harm alleged to sustain a § 1983 claim." *Paul v. City of New York*, No. 16-CV-1952 (VSB), 2017 WL 4271648, at *4 (S.D.N.Y. Sept. 25, 2017). To survive a motion to dismiss, then, the complaint must allege that the moving defendant either directly participated in the alleged misconduct or did so indirectly, "such as [by] 'ordering or helping others to do the unlawful acts.'" *Id.* (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)). "Pleadings that fail to differentiate as to which defendant was involved in the alleged unlawful

---

presented with materials outside the pleadings *in counseled cases*, a court must either exclude the materials from its review or convert the motion to one for summary judgment under Rule 56 . . . ." (emphasis added) (citing *Chambers*, 282 F.3d at 154)). Here, I exclude from my review the extrinsic materials attached by either the defendant or the plaintiff, both of whom are represented by counsel.

9

conduct are insufficient to state a claim." *Adamou v. County of Spotsylvania*, No. 1:12-CV-7789 (ALC), 2016 WL 1064608, at *11 (S.D.N.Y. Mar. 14, 2016).

b. First, with respect to the stop and search, the plaintiff alleges that he was "approached by New York City Police Officers (including Defendants GIVENS, CURION, LAWRENCE, and JOHN DOES 1-10)," that he "was told by the New York City Police Officers to 'turn around,'" and that "[t]he New York City Police Officers then began an unlawful search of Plaintiff's person." Am. Compl. ¶¶ 14–16. The defendant asserts that this constitutes "impermissible group pleading, lumping all three named defendants with John Does 1-10 without pleading any facts demonstrating what each defendant did that makes him or her individually liable for [plaintiff's] unlawful stop or unlawful search claims." Def.'s Br. 10.

Although the complaint's imprecision is not ideal, it does not present the sort of group pleading that courts have found insufficient to state a claim. In *Leneau v. Ponte*, No. 1:16-CV-0776 (GHW), 2018 WL 566456 (S.D.N.Y. Jan. 25, 2018), *appeal dismissed*, No. 18-683 (2d Cir. July 16, 2018), for example, the court dismissed two defendants where "the only allegation that [could] reasonably be construed as pleading [one defendant's] direct involvement [was] Plaintiff's assertion that 'all the defendants named are liable and responsible for [the Plaintiff's injury]'" and where the "only mention" of another defendant was found "in the list of defendants." *Id.* at *15 (quoting complaint).[7] Here, by contrast, the complaint refers to all the defendants collectively because all the defendants were, it alleges, on the scene and actively involved in the complained-of conduct. *See, e.g.*, Am. Compl. ¶ 14. The plaintiff's decision to

---

[7] Similarly, in *Demosthene v. City of New York*, No. 18-CV-1358 (ARR), 2019 WL 181305 (E.D.N.Y. Jan. 10, 2019), I noted that certain allegations, which I found "amount[ed] to vague speculations and unsupported conclusions" also "fail[ed] to identify the role of each of the defendant officers" in the alleged misconduct. *Id.* at *6–7. The group pleading in that case was a sideshow to the real flaw in the complaint, which was that its allegations were "nearly all conclusory." *Id.* at *5.

10

refer to the defendants collectively rather than listing their names individually does not invalidate his pleading. *Cf. Paul*, 2017 WL 4271648, at *4–5 (denying motion to dismiss even though "the Amended Complaint [did] not consistently specify exactly which officer did what, and instead, at various points, refer[red] to the Individual Defendants as a group" because allegations made clear that "all of the Individual Defendants . . . were at least present at the scene and witnessed the events"); *Adamou*, 2016 WL 1064608, at *11 (refusing to dismiss complaint despite "several instances of impermissible 'group pleading'" because "[group] allegations [were] buttressed by specific allegations against" individual defendants).

c. As for the allegations of excessive force, the instant complaint states that, "[i]nstead of intervening to prevent Defendant[ ] JOHN DOE 1's[ ] assault and battery of Plaintiff . . . , GIVENS, CURION, LAWRENCE, and JOHN DOES 2-10[ ] . . . us[ed] . . . excessive force to violently push Plaintiff up against" his car. Am. Compl. ¶ 21.[8] Again, the defendant argues that this constitutes "impermissible group pleading, [in that it] lump[s] all three named defendants with John Doe 1-10 . . . without pleading specific facts demonstrating what each named defendant purportedly did." Def.'s Br. 22.

These allegations also pass muster. "A police officer is personally involved in the use of excessive force if the officer either: (1) directly participates in an assault; or (2) is present during the assault, and fails to intercede on behalf of the victim even though [she] had a reasonable opportunity to do so." *Vesterhalt v. City of New York*, 667 F. Supp. 2d 292, 297 (S.D.N.Y. 2009) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997)). As a result, "[a] plaintiff need not establish which officer, among a group of officers, directly participated in the attack and which officer failed to intervene." *Id.* (citing *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003)). Here, the plaintiff has alleged that *all* the officers used

---

[8] The plaintiff has clarified that the "1–10" numbering of the John Does is not meant to imply that there were in fact ten unnamed officers on the scene. *See* Pl.'s Opp'n 3 n.3, ECF No. 33.

excessive force and that *all* the officers, except John Doe 1, failed to intervene. *See* Am. Compl. ¶¶ 20–21. While the defendant objects that these allegations are "inconceivable" (Def.'s Br. 22), her objection, at best, is that the plaintiff can plausibly allege only that *some* of the defendants used excessive force while others merely failed to intervene. But the plaintiff, "at this stage in litigation," need not "pick out which of the[ ] officers actually" used excessive force against him; it is adequate that he "allege[s] that all of these officers were present at the time of his arrest and, at the very least, failed to intervene on his behalf" (*Marlin v. City of New York*, No. 15-CV-2235 (CM), 2016 WL 4939371, at *14 (S.D.N.Y. Sept. 7, 2016)). The plaintiff has sufficiently alleged Givens's personal involvement.

### 2. *The Initial Stop*

According to the complaint, "Plaintiff was lawfully standing on the sidewalk" when he was "approached by" the defendants and "told . . . to 'turn around,' to which [he] complied." Am. Compl. ¶¶ 13–15. Givens argues that this sequence of events does not implicate the Fourth Amendment in that it "appears to [have] be[en] consensual." Def.'s Br. 11. The argument fails.

A Fourth Amendment "seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required." *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (citation omitted) (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991)). Rather, "a seizure requires '*either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority.'" *United States v. Swindle*, 407 F.3d 562, 565 (2d Cir. 2005) (quoting *Hodari D.*, 499 U.S. at 626). Here, although the officers ultimately used physical force on the plaintiff (*see* Am. Compl. ¶¶ 16, 20–21), the plaintiff argues that he was unlawfully stopped as soon as he submitted to their authority by

12

turning around (*see* Pl.'s Opp'n 8–9, ECF No. 33). The precise moment when the plaintiff was seized matters, of course, because "[t]he grounds for a stop must exist at the time of the seizure." *United States v. Simmons*, 560 F.3d 98, 107 (2d Cir. 2009).

The Second Circuit has said clearly that "[a] police officer's order to stop constitutes a seizure if 'a reasonable person would have believed that he was not free to leave,' and the person complies with the officer's order to stop." *Id.* at 105–06 (citation omitted) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (opinion of Stewart, J.); citing *Swindle*, 407 F.3d at 572). Here, the plaintiff alleges that he was approached on the street, in the middle of the night, by several police officers, who told him to turn around—and that he did. *See* Am. Compl. ¶¶ 13–15. Taking all reasonable inferences in the plaintiff's favor, I find that he has adequately alleged that he was stopped for Fourth Amendment purposes.

In support of her argument, the defendant relies on *Almonte v. City of New York*, No. 15-CV-6843 (PAE), 2018 WL 3998026 (S.D.N.Y. Aug. 21, 2018). *See* Def.'s Br. 11. In *Almonte*, as the plaintiff was walking in a park, a police officer in a car "called out to him," whereupon the plaintiff "stopped . . . and approached the police car." 2018 WL 3998026, at *1. The court ruled that the plaintiff was collaterally estopped from arguing that that encounter constituted a stop under the Fourth Amendment because a judge had previously ruled that the encounter was "consensual." *Id.* at *4. That previous decision, however, was based on a judicial finding that "no element of [the] interaction . . . would have suggested to any reasonable person that Mr. Almonte was not free to walk away from the officers" and that "the officers did not appear to deliver any order of any kind to Mr. Almonte." Transcript at 8, *United States v. Almonte*, No. 14-CR-0086 (KPF) (S.D.N.Y. June 10, 2014). In the instant case, the situation is quite different. The plaintiff alleges that a group of police officers approached him and ordered him to turn around, before searching him. *See* Am. Compl. ¶¶ 14–16. That the plaintiff complied

13

with their instructions—rather than ignoring them and risking the use of force—will not be held against him.

The rest of the defendant's arguments against the plaintiff's claim that he was unconstitutionally stopped rely on extrinsic materials that I do not consider. *See supra* Section A. I therefore find that the plaintiff has stated a claim that he was unreasonably seized.

3. *Excessive Force*

The complaint alleges that one unnamed officer, "with the use of hostile, unnecessary, extreme and excessive force, slammed Plaintiff up against" his car. Am. Compl. ¶ 20. And it asserts that Givens, as well as other defendant officers, then "us[ed] hostile, unnecessary, extreme and excessive force to violently push Plaintiff up against" his car. *Id.* ¶ 21. Givens argues that these allegations fail to state a claim of excessive force because "restraining a criminal suspect against a wall or other object in order to apply handcuffs" is "expected and typical" when effecting an arrest. Def.'s Br. 21–22.

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "Whether the force used to effect an arrest is 'reasonable' or 'excessive' turns on 'a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake.'" *Figueroa v. Mazza*, 825 F.3d 89, 105 (2d Cir. 2016) (quoting *Graham*, 490 U.S. at 396). In other words, "[t]he force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000).

Here, nothing in the complaint suggests that the plaintiff used any force or presented any danger to the defendants, and indeed the plaintiff alleges that the defendants used force

14

against him "without provocation." Am. Compl. ¶ 20. That the plaintiff does not allege that he posed a threat to the officers is perhaps to be expected, but since the court must take the plaintiff's factual allegations as true at this juncture, it is unsurprising that "courts are rarely able to assess the reasonableness of the force used at the motion to dismiss stage" (*Hester-Bey v. Ford*, No. 13-CV-4656 (CBA) (LB), 2015 WL 4910576, at *3 (E.D.N.Y. Aug. 13, 2015)). The plaintiff's excessive-force claim survives.

**C.    Notice of Claim**

Finally, in addition to his federal causes of action, the plaintiff alleges that Givens is liable for false arrest or imprisonment, assault, and battery under New York state law. *See* Am. Compl. ¶¶ 71–81. Givens argues that these claims must be dismissed because the amended complaint does not allege compliance with New York's statutory notice-of-claim requirement. *See* Def.'s Br. 23–24. This argument fails.

"Under New York law, a notice of claim is a mandatory condition precedent to the bringing of a tort claim against a public corporation and any of its officers, appointees, or employees." *Vesterhalt*, 667 F. Supp. 2d at 300 (citing N.Y. Gen. Mun. Law § 50-e(1)(a)). "However, in suits against municipal . . . employees, as opposed to suits against municipalities . . . themselves, 'service of the notice of claim upon the public corporation shall be required only if the corporation has a statutory obligation to indemnify such person . . . .'" *Id.* (quoting § 50-e(1)(b)). The City of New York is statutorily required to indemnify its employees against all adverse judgments "provided that the act or omission from which such judgment . . . arose occurred while the employee was acting within the scope of his public employment and in the discharge of his duties and was not in violation of any rule or regulation of his agency." § 50-k(3). Additionally, "the duty to indemnify . . . shall not arise where the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee." *Id.*

15

Because the "use of excessive force" is unquestionably "intentional misconduct," the notice-of-claim requirement is inapplicable to the plaintiff's claims of assault and battery. *Brenner v. Heavener*, 492 F. Supp. 2d 399, 405 (S.D.N.Y. 2007); *accord Bradshaw v. City of New York*, No. 17-CV-1199 (AJP), 2017 WL 6060781, at *17–18 (S.D.N.Y. Dec. 7, 2017); *Sheikh v. City of New York, Police Dep't*, No. 03-CV-6326 (NGG), 2008 WL 5146645, at *13 (E.D.N.Y. Dec. 5, 2008) ("If Burgess were found liable for . . . assault and battery, . . . the city would not be required to indemnify him."); *see also Williams v. Cablevision Sys. Corp.*, No. 98-CV-7988 (RPP), 2000 WL 218403, at *4 (S.D.N.Y. Feb. 24, 2000) ("[T]here is no statutory provision obligating the City to indemnify police officers from . . . claims [of assault and battery].").

Federal courts in New York are conflicted, however, as to claims of false arrest or false imprisonment. Some courts reason that "false arrest [is an] intentional tort[ ] under New York law" and thus constitutes "'intentional wrongdoing' that does not qualify for indemnification." *Vesterhalt*, 667 F. Supp. 2d at 301; *accord Bradshaw*, 2017 WL 6060781, at *18 (rejecting notice-of-claim argument as to "intentional tort claim[ ]" for "false imprisonment"); *see also Cablevision*, 2000 WL 218403, at *4 ("[T]here is no statutory provision obligating the City to indemnify police officers from . . . claims [of false arrest and false imprisonment]."). Other courts, however, have ruled that "claims alleging false arrest" are covered by the indemnification requirement because they pertain to conduct "that occurred while [the defendant officers] were acting within the scope of their public employment and discharging official duties, and not in violation of any NYPD rule." *Brenner*, 492 F. Supp. 2d at 404–05; *see also Sheikh*, 2008 WL 5146645, at *13 (dismissing false-arrest claim against individual defendant for failure to allege service of notice of claim).

The former view is the better one, at least in the context of this case. The city is required to indemnify its employees only for conduct that (1) was "within the scope of [their] public

16

employment and in the discharge of [their] duties," (2) "was not in violation of any rule or regulation of [their] agency," *and* (3) did not constitute "intentional wrongdoing or recklessness." § 50-k(3). Accordingly, the city is not *required* to indemnify police officers for intentional wrongdoing, even if done within the scope of their employment. The only question then is whether alleged false arrest or false imprisonment by a police officer constitutes intentional wrongdoing.

On the one hand, under New York law, "actual malice" is not "an essential element of an action for false imprisonment." *Wright v. Musanti*, 887 F.3d 577, 587 (2d Cir. 2018) (quoting *Broughton v. State*, 335 N.E.2d 310, 314 (N.Y. 1975)). Although "false imprisonment" is an "intentional tort[ ]" under New York law (*Lombardoni v. Boccaccio*, 553 N.Y.S.2d 249, 250 (App. Div. 1990)), the defendant is required to have intended only *to confine* the plaintiff (*see Wright*, 887 F.3d at 587 (citing *Broughton*, 335 N.E.2d at 314); *see also Rice v. City of New York*, 275 F. Supp. 3d 395, 409 (E.D.N.Y. 2017) ("To prove intent, the defendant must have either: (1) confined or intended to confine plaintiffs, or (2) affirmatively procured or instigated the plaintiff's arrest.")). The wrongfulness element of the tort—that "the confinement was not otherwise privileged" (*Wright*, 887 F.3d at 587 (citing *Broughton*, 335 N.E.2d at 314))—does not itself contain an intent requirement.

For all practical purposes, however, a police officer will be not held liable for a false arrest committed by mistake. *See Jones v. Parmley*, 465 F.3d 46, 63 (2d Cir. 2006) ("New York law . . . grant[s] government officials qualified immunity on state-law claims except where the officials' actions are undertaken in bad faith or without a reasonable basis."). What is more, in this case, the plaintiff alleges that Givens *knew* that he had not committed a crime. *See* Am. Compl. ¶¶ 34, 53. Accordingly, at least in the context of this case, the claim for false arrest or

false imprisonment is plainly an allegation of intentional wrongdoing, and thus I find that a notice of claim is not required.[9] The plaintiff's state-law claims may proceed.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss is denied.

So ordered.

____/s/_____
Allyne R. Ross
United States District Judge

Dated: April 15, 2019
Brooklyn, New York

---

[9] Incidentally, I observe that, although it is no longer the operative pleading, the original complaint filed in this action *did* allege compliance with the notice-of-claim requirement. *See* Compl. ¶ 45. The allegation was removed from the complaint when the plaintiff dismissed his claims against the city. *See* Am. Compl. If I found this allegation necessary for the plaintiff's false-arrest claim, I would certainly grant the plaintiff leave to reinsert this allegation into his pleadings.